## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GGNSC CAMP HILL WEST SHORE,** | : | **CIVIL ACTION NO. 1:15-CV-445** |
| **LP, d/b/a GOLDEN LIVING CENTER -** | : | |
| **WEST SHORE,** *et al.*, | : | **(Chief Judge Conner)** |
| | : | |
| **Petitioners** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SHIRLEY MAE THOMPSON, by and** | : | |
| **through her Attorney-in-Fact,** | : | |
| **MICHELLE MULLEN,** | : | |
| | : | |
| **Respondent** | : | |

## MEMORANDUM

Presently before the court in the above-captioned action is a petition (Doc. 1) to compel arbitration and to enjoin related state court proceedings under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, filed by GGNSC Camp Hill West Shore LP d/b/a Golden Living Center West Shore, GPH Camp Hill West Shore, LP, Golden Gate National Senior Care, LLC, GGNSC Holdings, LLC, GGNSC Equity Holdings, LLC, GGNSC Administrative Services, LLC, GGNSC Clinical Services, LLC, and Golden Gate Ancillary LLC, (collectively, "GGNSC"). For the reasons that follow, the court will deny GGNSC's petition to compel pending a period of arbitrability discovery and, in aid of exercising jurisdiction, will grant GGNSC's request to enjoin further prosecution of the state court proceedings.

## I.   <u>Background</u>

On June 4, 2013, petitioner Shirley Mae Thompson ("Thompson") was admitted to a skilled nursing facility located in Camp Hill, Pennsylvania, collectively owned and operated by the GGNSC petitioners.  (Doc. 1 ¶¶ 11, 18).  Upon admission, Thompson executed a voluntary Alternative Dispute Resolution Agreement ("ADR Agreement").  (<u>See</u> <u>id.</u> ¶¶ 19-21).  The ADR Agreement mandates that any dispute arising out of Thompson's stay at the facility "shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration."  (<u>Id.</u> Ex. B at 1-2).  The ADR Agreement further provides:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY . . .**

(<u>Id.</u> ¶¶ 22-23; Ex. B at 1).  The ADR Agreement expressly includes within its scope any claims sounding in tort, negligence, gross negligence, malpractice, and "any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards."  (<u>Id.</u> ¶ 24; Ex. B. at 2).  The agreement states that it is to be "governed by and interpreted under the Federal Arbitration Act ("FAA")."  (<u>Id.</u> ¶ 27; Ex. B. at 3).

On February 13, 2015, Thompson, through her attorney-in-fact Michelle Mullen, filed a complaint in the Court of Common Pleas of Cumberland County, Pennsylvania.  According to the complaint, Thompson's three-month stay at the facility was marked by severe mistreatment, causing her to suffer various and

substantial injuries. (See Complaint[1] ¶¶ 25-75). She asserts claims sounding in negligence, generally, as well as corporate negligence, negligence *per se*, and departure from applicable statutory standards of care. (See *id.* ¶¶ 76-108). The state court complaint identifies all petitioners *sub judice* as defendants, as well as Beverly Fry, Nursing Home Administrator at the Camp Hill facility during Thompson's residency. (See *id.* ¶¶ 4-21). On March 3, 2015, GGNSC commenced the instant action seeking enforcement of the ADR Agreement. (Doc. 1). GGNSC thereafter filed preliminary objections in the state court action, asserting that the ADR Agreement barred Thompson's complaint in its entirety. GGNSC's objections are pending before the state court. (See Doc. 12 ¶ 3; Doc. 17 at 3).

Upon receipt of GGNSC's instant petition, this court convened a telephonic conference call with the parties in order to chart a course for further proceedings. (See Docs. 7, 10). On April 7, 2015, pursuant to a briefing schedule issued by the court, Thompson filed a comprehensive response to the petition, asserting several defenses thereto. (See Doc. 18). GGNSC filed a reply brief on April 16, 2015. (See Doc. 19). The matter is thus fully briefed and ripe for disposition.

## II.   **Discussion**

Thompson's arguments in opposition to GGNSC's petition are threefold. Thompson contends: *first*, that GGNSC failed to join an indispensable party, and that requisite joinder of that party will destroy diversity; *second*, that the court should abstain from hearing the dispute whatsoever pursuant to the abstention

---

[1] Citations to "Complaint" are to Thompson's complaint in the underlying state court proceedings, attached to GGNSC's petition as Exhibit A. (See Doc. 1, Ex. A).

doctrine announced in <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976); and *third*, that the court should refrain from enjoining the state proceeding under the Anti-Injunction Act, 28 U.S.C. § 2283.  (<u>See</u> Doc. 5-19).  Thompson contends, in the alternative, that she is entitled to a period of limited discovery in order to establish her contract-based arbitrability defenses.  (<u>See</u> <u>id.</u> at 20-27 ).  The court addresses Thompson's arguments *seriatim*.

### A.    Subject Matter Jurisdiction[2]

Thompson urges the court, as a threshold matter, to dismiss GGNSC's petition for lack of subject matter jurisdiction.[3]  Thompson contends that GGNSC failed to join Beverly Fry ("Fry")—a party defendant in the state court litigation and a resident of Pennsylvania—for the transparent purpose of establishing diversity jurisdiction.  Thompson asserts that Fry is both necessary and indispensable to this litigation, requiring the court to dismiss GGNSC's petition for want of jurisdiction.  GGNSC responds that, to the extent Fry is a necessary party pursuant to Federal Rule of Civil Procedure 19(a), she is not indispensable as contemplated by Rule 19(b), and the court retains jurisdiction.

---

[2] The FAA does not itself confer federal question jurisdiction upon the court.  <u>See</u> <u>Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 25 n.32 (1983) ("The [FAA] is something of an anomaly in the field of federal-court jurisdiction.  It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise.").  Hence, the petitioner must establish an independent basis for jurisdiction over the underlying claim.

[3] Per the court's directive, Thompson raised her arguments in opposition to GGNSC's petition and in support of dismissal in an omnibus response.

Rule 19 of the Federal Rules of Civil Procedure governs compulsory joinder of nonparties.  See FED. R. CIV. P. 19.  Under the Rule, a party is "necessary" to an action when, *inter alia*, the party possesses an interest in or relating to the action, and disposing of the action in the party's absence may leave existing parties subject to inconsistent obligations.  FED. R. CIV. P. 19(a).  Fry indeed possesses an interest in this litigation, and one which might expose Thompson to inconsistent judicial decisions.  The ADR Agreement covers not only GGNSC, but also employees such as Fry, and there exists a possibility of inconsistent arbitrability determinations as between this court and the state court.  See, e.g., Golden Gate Nat'l Senior Care, LLC v. Lane, No. 3:14-CV-1957, 2015 WL 926432, at *3 (M.D. Pa. Mar. 4, 2015) (Caputo, J.); GGNSC Equity Holdings, LLC v. Breslin, No. 1:14-MC-450, 2015 WL 5463856, at *3 (M.D. Pa. Oct. 27, 2014) (Caldwell, J.); see also Golden Gate Nat'l Senior Care, LLC v. Addison, No. 1:14-MC-421, 2015 WL 4792386, at *6-8 (M.D. Pa. Sept. 24, 2014) (Rambo, J.).  Consequentially, the court concludes without difficulty that Fry is a "necessary" party under Rule 19(a).

The more demanding inquiry is whether Fry is an "indispensable" party as contemplated by Rule 19(b).  GGNSC ostensibly does not dispute that joinder of Fry, a Pennsylvania resident, would divest the court of diversity jurisdiction.  (See Doc. 19 at 3-5).  In such circumstances, the court must determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  FED. R. CIV. P. 19(b); see also Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007) (concluding that when a nonparty is indispensable but joinder is not feasible, "the action cannot go forward").  The Rule

directs the court to consider several factors, including: (1) the extent to which any judgment in the necessary party's absence might prejudice either the absent party or existing parties; (2) the extent to which any such prejudice might be avoidable or mitigated; (3) whether judgment rendered absent the party would be adequate; and (4) whether the non-moving party has an adequate alternative remedy if the matter is dismissed. FED. R. CIV. P. 19(b)(1)-(4).

Thompson reiterates concerns underlying the court's Rule 19(a) analysis, in particular a potential for inconsistent judgments, but fails to offer any independent support for her position that Fry is so crucial to the litigation as to be "indispensable." (See Doc. 17 at 11-13). Balancing the respective prejudices as Rule 19(b) commands, several jurists within this judicial district have held that GGNSC's managerial employees are *not* indispensable in nearly identical litigation. See Lane, 2015 WL 926432, at *3 (Caputo, J.); Breslin, 2015 WL 5463856, at *3 (Caldwell, J.); Addison, 2015 WL 4792386, at *6-8 (Rambo, J.). The court concurs with the well-reasoned opinions of its colleagues. Excepting a potential for inconsistent judgments, Thompson identifies nothing so compelling about Fry's absence to warrant dismissal of the action in its entirety. See, e.g., Breslin, 2015 WL 5463856, at *4 (concluding that prejudice from potential procedural inconsistencies "is minimal"). The action may thus proceed in Fry's absence, and the court retains subject matter jurisdiction over the litigation.

### B.   <u>Colorado River</u> Abstention

Thompson argues that the court should nonetheless abstain from exercising jurisdiction pursuant to the abstention doctrine announced by the Supreme Court in <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976). The <u>Colorado River</u> doctrine permits courts to abstain from exercising jurisdiction by staying or dismissing a pending federal action in favor of a parallel state court proceeding.  <u>Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299, 307 (3d Cir. 2009).  The court must apply the doctrine cautiously, mindful that abstention is an "extraordinary and narrow exception" to its "virtually unflagging obligation" to exercise jurisdiction when conferred by Congress.  <u>Id.</u> (quoting <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996)).  The abstention analysis comprises a two-part inquiry:  the court must decide first whether the actions are indeed "parallel" and, second, whether the matters present the "extraordinary circumstances" contemplated by <u>Colorado River</u> and its progeny.  <u>See</u> <u>Nationwide</u>, 571 F.3d at 307 (citing <u>Moses H. Cone</u>, 460 U.S. at 23-27; <u>Colorado River</u>, 424 U.S. at 818-19.  The record answers both questions in the negative.

The definition of parallelism is largely undeveloped.  <u>See</u>, <u>e.g.</u>, <u>GGNSC Lancaster v. Roberts</u>, No. 13-5291, 2014 WL 1281130, at *3 n.15 (E.D. Pa. Mar. 31, 2014) (Stengel, J.) (noting that courts typically do not address this inquiry when factors warranting abstention do not otherwise exist).  Generally, proceedings are "parallel" when they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues."  <u>Yang v. Tsui</u>, 416 F.3d 199, 204 n.5 (3d Cir. 2005) (internal quotation marks omitted) (quoting <u>Timoney v. Upper Merion</u>

Twp., 66 F. App'x 403, 405 (3d Cir. 2003)).  A federal action seeking arbitration is not necessarily "parallel" to a state court lawsuit merely because it is a varied extension thereof; rather, the court must ask whether the actions involve the same parties and issues, and whether the actions seek the same remedy.  See Roberts, 2014 WL 1281130, at *3 (citing Allied Nut and Bolt, Inc. v. NSS Industries, Inc., 920 F. Supp. 626, 630-31 (E.D. Pa. 1996)).

The instant action involves the same parties as the state court case and shares its core legal issue with the threshold arbitrability inquiry presently before the state court.  However, the nucleus of each matter is distinct:  the focus of the federal matter is exclusively the question of arbitrability, while the issues central to the state court action sound in negligence and malpractice.  Moreover, the actions seek vastly different remedies:  GGNSC seeks arbitration here, while Thompson seeks monetary damages before the state court.  The court cannot conclude that the overlap of parties and a singular legal issue renders the actions sufficiently parallel for abstention purposes.  See, e.g., Lane, 2015 WL 926432, at *3; Breslin, 2014 WL 5463856, at *5; Addison, 2014 WL 4792386, at *8-9; Roberts, 2014 WL 1281130, at *3; but see Golden Gate Nat'l Senior Care, LLC, v. Minich, No. 14-MC-219, Doc. 10 at 1 (E.D. Pa. Oct. 22, 2014) (summarily granting respondent's motion to dismiss in favor of "parallel state court proceeding").  For this reason alone, Colorado River abstention is inappropriate sub judice.  See Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997) (observing that when pending cases are not parallel, "the district court lacks the power to abstain").

Assuming parallelism *arguendo*, an analysis of the Colorado River factors also reveals that this action does not present the type of circumstances warranting abstention.  The Supreme Court identified six factors to consider when deciding whether to abstain in deference to a pending state court proceeding.  Colorado River, 424 U.S. at 818.  Those factors are:  (1) in an *in rem* case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) whether federal law or state law controls the decision; and (6) whether the state court will adequately protect the interests of the parties.  See id. at 818-19; Moses H. Cone, 460 U.S. at 23-27.  The court must evaluate the factors through the prism of the Supreme Court's directive that the balance should be "heavily weighted in favor of the exercise of jurisdiction."  Moses H. Cone, 460 U.S. at 16.  In determining whether Colorado River favors abstention *sub judice*, this court does not write upon a blank slate.  Several courts within the Third Circuit, to include the undersigned, have previously examined the Colorado River doctrine in nearly identical circumstances and, in every case, have declined its application.[4]

---

[4] The court acknowledges Judge McHugh's recent decision in Minich, summarily granting respondent's motions to dismiss and concluding that parallel procession of the two matters would be "wastefully duplicative."  See Minich, No. 14-MC-219, Doc. 10.  Although his consideration of the Colorado River factors is presumed, Judge McHugh's order offers little guidance with respect to their proper application.

In the context of <u>Colorado River</u>, the convenience of the forum refers to the forum's geographic location.[5]  <u>See Manor Care of Camp Hill, PA, LLC v. Fleagle</u>, No. 1:13-CV-2449, 2013 WL 6185604, at *3 (M.D. Pa. Nov. 25, 2013) (Conner, C.J.) (citing <u>Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas</u>, 309 F. Supp. 2d 652, 657 (M.D. Pa. 2004)).  The Court of Common Pleas of Cumberland County sits in Carlisle, Pennsylvania, approximately twenty miles from the instant forum.  The proximity of the fora leads to the conclusion that the state and federal courts are equally convenient to the parties.  This factor is neutral to the court's abstention analysis.  <u>See Addison</u>, 2014 WL 4792386, at *10; <u>Fleagle</u>, 2013 WL 6185604, at *3.

Thompson dismisses the third factor—the interest of avoiding piecemeal litigation—as irrelevant to the court's analysis.  (<u>See</u> Doc. 17 at 16 (indicating that only the fourth, fifth, and sixth factors are relevant)).  Contrarily, the third factor counsels against abstention.  In assessing this factor, the court must determine whether the statute at issue evinces a clear policy of avoiding fragmented litigation.  <u>See Nationwide</u>, 571 F.3d at 308 (citing <u>Spring City Corp. v. Am. Bldgs. Co.</u>, 193 F.3d 165, 171 (3d Cir. 1999)).  The FAA accepts piecemeal litigation as a consequence of honoring arbitration agreements.  <u>See</u>, <u>e.g.</u>, <u>Addison</u>, 2014 WL 4792386, at *10 ("The FAA maintains a policy in favor of arbitration even at the expense of piecemeal litigation.") (citing <u>Nationwide</u>, 571 F.3d at 308); <u>see also Fleagle</u>, 2013 WL 6185604, at *3-4 (same).  Additionally, the court's ability to stay the state court proceedings, coupled with the fact that the arbitration clause encompasses the state claims,

---

[5] The first factor, regarding *in rem* litigation, is irrelevant to the court's abstention analysis because no property is at issue.

lessens the risk of inconsistent results or duplicative litigation.  <u>See</u> <u>Roberts</u>, 2014 WL 1281130, at *4; <u>see also</u> <u>Addison</u>, 2014 WL 4792386, at *10; <u>Fleagle</u>, 2013 WL 6185604, at *4.  This factor weighs heavily against abstention.

The fourth factor favors abstention, but only slightly.  Thompson asserts that the state court action was commenced first in time, conclusively resolving the fourth inquiry in its favor.  (<u>See</u> Doc. 17 at 16).  However, the Supreme Court has cautioned that the court's analysis should be more searching, stating that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  <u>Moses H. Cone</u>, 460 U.S. at 21.  GGNSC filed its preliminary objections in the state court, asserting arbitrability as a defense, on March 6, 2015, three days after it commenced the instant federal action.  (Doc. 1; Doc. 12 ¶ 3).  Since that time, the cases have proceeded largely in tandem.  The issue of arbitrability is fully briefed before both courts, but neither the state court nor the undersigned has yet ruled on the parties' respective arguments.  The court concludes that this factor is largely a wash, with the acknowledgment that Thompson did commence her state court action first in time.

The fifth factor is likewise neutral.  Both state and federal law apply to the parties' disputes, whether the matter proceeds in state or federal court.  The FAA governs enforceability of the agreement, but Pennsylvania law will determine the agreement's validity measured against Thompson's unconscionability and capacity arguments.  <u>See</u> <u>Roberts</u>, 2014 WL 1281130, at *5; <u>Addison</u>, 2014 WL 4792386, at *11; <u>Fleagle</u>, 2013 WL 6185604, at *5-6.  The mere implication of state law does not sway

the weighted balance in favor of abstention.  See Fleagle, 2013 WL 6185604, at *6
(holding that, with limited exceptions, "cases implicating state law rarely justify
abstention") (citing Ryan, 115 F.3d at 199).

The sixth and final factor concerns whether the state court will adequately
protect the federal petitioners' interest.  This factor is most influential when the
state court is either inadequately equipped or otherwise unlikely to protect the
rights of the party seeking arbitration.  See Moses H. Cone, 460 U.S. at 27; Gekas,
309 F. Supp. 2d at 660-61.  The FAA grants jurisdiction to the state and federal
courts concurrently, compelling each to enforce its mandates to the same extent.
See Nationwide, 571 F.3d at 308.  The state court has not indicated that it will reject
the strong statutory policy in favor of arbitration, and this court is confident that the
Commonwealth's jurists are both capable of and equipped to resolve the questions
of arbitrability raised herein.  See Fleagle, 2013 WL 6185604, at *6; see also Roberts,
2014 WL 1281130, at *5; Addison, 2014 WL 4792386, at *12.  For this reason, the sixth
and final factor is neutral to the court's analysis.

On balance, the Colorado River and Moses H. Cone factors, as applied to the
matter before the court, do not establish "exceptional circumstances" warranting
abstention.  Although Thompson's state court complaint was filed first in time, the
balance of the factors are either neutral or weigh in favor of federal jurisdiction.
Moreover, in balancing these factors, the court is ever mindful of its overarching
obligation to exercise jurisdiction.  See Nationwide, 571 F.3d at 307 (quoting
Quackenbush, 517 U.S. at 716).  This result is undergirded by ample authority both
within this and other judicial districts.  See, e.g., Addison, 2014 WL 4792386, at *9-

12; <u>Roberts</u>, 2014 WL 1281130, at *3-5; <u>Fleagle</u>, 2013 WL 6185604, at *2-6; <u>see also</u>

<u>Lane</u>, 2015 WL 926432, at *3; <u>Breslin</u>, 2014 WL 5463856, at *4-5.  The court will deny

Thompson's request to abstain in deference to the state court matter and exercise

jurisdiction over the instant dispute.

### C.    The Anti-Injunction Act

Thompson next cites principles of comity and federalism in asking the court

to refrain from enjoining the pending state litigation.  At the outset, the court notes

that, given its decision *supra* regarding jurisdiction, granting Thompson's request

would spur rather than stifle the noted hazards of duplicity and inconsistency.  In

any event, to the extent Thompson argues that this court lacks authority to enjoin

the state court action, her position lacks merit.  The Anti-Injunction Act ("AIA")

generally prohibits federal courts from enjoining state court proceedings.  <u>See</u> 28

U.S.C. § 2283.  However, the AIA contains several noteworthy exceptions, one of

which applies here, *to wit*:  a federal court may enjoin state court proceedings

"where necessary in aid of its jurisdiction."  <u>Id.</u> § 2283.  Hence, this court may order

an injunction pending resolution of GGNSC's petition.  <u>See</u> <u>Lane</u>, 2015 WL 926432,

at *4 (citing <u>Breslin</u>, 2014 WL 5463856, at *5; <u>Addison</u>, 2014 WL 4792386, at *15); <u>see</u>

<u>also</u> <u>Fleagle</u>, 2013 WL 6185604, at *4 (observing in connection with <u>Colorado River</u>

analysis that "the court may order an injunction pending arbitration under the

second exception to the [AIA] because it is necessary in aid of exercising the court's

jurisdiction . . . .").  Not only is such relief authorized by the AIA itself, an injunction

mitigates Thompson's concerns with duplicative, contemporaneous litigation.  The

court rejects Thompson's argument and finds that an injunction is not only permissible but also appropriate and necessary under the circumstances.

### D.   Petition to Compel Arbitration

The court turns lastly to the substance of GGNSC's petition to compel arbitration.  The parties initially dispute the standard of review applicable to such requests.  GGNSC attaches to its petition Thompson's state court complaint and the parties' agreement, contending that those documents establish all facts necessary to compel arbitration, that is:  that a valid arbitration agreement exists and that the underlying dispute is within the scope of the agreement.  (See Doc. 1 ¶¶ 19-34; Doc. 19 at 13-16).  GGNSC argues that, under such circumstances, the familiar Rule 12(b)(6) standard applies.  (See id.)  Thompson responds that the agreement to arbitrate is unconscionable and invalid for lack of capacity, and that additional discovery is necessary to establish these defenses.  (See Doc. 17 at 20-27).  On this point, the court agrees with Thompson.

A district court may rely upon either the standards governing motions to dismiss under Rule 12(b)(6) or those governing summary judgment motions under Rule 56 in resolving a petition to compel arbitration.  See Guidotti v. Legal Helpers Debt Resolution LLC, 716 F.3d 764, 771-76 (3d Cir. 2013).  In Guidotti, the Third Circuit offered guidance for determining which standard may be appropriate in the varying circumstances and procedural postures of such cases, observing that:

> when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.

14

> But if the complaint and its supporting documents are
> unclear regarding the agreement to arbitrate, or if the
> plaintiff has responded to a motion to compel arbitration
> with additional facts sufficient to place the agreement to
> arbitrate in issue, then the parties should be entitled to
> discovery on the question of arbitrability before a court
> entertains further briefing on the question.

Id. at 776 (internal citations and quotation marks omitted) (quoting Somerset

Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa.

Nov. 15, 2011)).  If the court elects to allow discovery, the court may thereafter

"entertain a renewed motion to compel arbitration, this time judging the motion

under a summary judgment standard."  Id.

There is no suggestion in Thompson's underlying complaint or in the

documents attached thereto that the parties' dispute is subject to an arbitration

agreement.  (Doc. 1, Ex. B).  Moreover, Thompson places the authenticity and

validity of the ADR Agreement squarely at issue by raising contract defenses of

unconscionability and lack of capacity in response to GGNSC's petition.  (See Doc.

17 at 20-27).  Consistent with Guidotti, limited discovery is warranted with respect

to "whether there was a meeting of the minds on the agreement to arbitrate," and

"to determine whether [the] arbitration clause is unconscionable."  Guidotti, 716

F.3d at 774 & n.5.  The instant petition simply "does not have as its predicate a

complaint with the requisite clarity to establish on its face that the parties agreed to

arbitrate."  Breslin, 2014 WL 5463856, at *6-7 (citing Guidotti, 716 F.3d at 771-76);

<u>Lane</u>, 2015 WL 926432, at *4-7 (same).[6]  The court concludes that the Rule 12(b)(6) standard suggested by GGNSC is thus inappropriate.  At this juncture, the court must deny GGNSC's petition.

**IV.**    <u>**Conclusion**</u>

For all of the reasons stated herein, the court will deny GGNSC's request to compel arbitration without prejudice.  The court will order limited discovery with respect to Thompson's asserted contract defenses, and thereafter permit GGNSC to file a renewed motion to compel arbitration if the results of discovery warrant the same.  However, in the interest of judicial economy, the court will grant GGNSC's request to stay the pending state court proceedings.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        April 28, 2015

---

[6] GGNSC highlights Judge Rambo's decision in <u>Addison</u>, where the court applied the Rule 12(b)(6) standard in resolving a motion to compel arbitration.  <u>See Addison</u>, 2014 WL 4792386, at *2-3.  <u>Addison</u> involved validity questions, the answers to which were readily gleaned from the petition and documents attached thereto. Thus, the matter is distinguishable from issues *sub judice*, which pertain to contact defenses not apparent from the four corners of the ADR Agreement.  <u>See id.</u>